OPINION
The defendant-appellant, Manuel Mendoza, brings this appeal from a judgment of conviction and sentence of the Marion County Court of Common Pleas, Criminal Division. For the following reasons we affirm the judgment of the trial court.
The pertinent facts and procedural history of the case are as follows. On July 19, 2000, the Marion City Police Department captured on videotape the appellant and his co-defendant, Jose Guadalupe Rodriguez, receiving a shipment alleged to contain approximately 24,626 grams of marijuana with a value of roughly $54,000.00. The marijuana was shipped via UPS from McAllen, Texas, to a vacant apartment in Marion, Ohio. Local officers intercepted the shipment from UPS, and then completed delivery through an undercover officer dressed as a UPS driver. When the shipment arrived, it was addressed to the name of Antonio Silva. Mendoza accepted delivery of the package and signed a fictitious name on the UPS delivery document. Immediately following delivery, officers converged upon the apartment and entered it with a search warrant. Inside, the officers found and arrested Mendoza and Rodriguez. The packages delivered by the undercover officer were recovered from an overhead loft within the apartment in the condition in which they were delivered.
In a joint trial before a jury, Mendoza and Rodriguez were found guilty of Possession of Marijuana in an amount exceeding 20,000 grams in violation of R.C. 2925.11(A)/(C)(3)(f). Pursuant to RC 2925.11(C)(3)(f), each was sentenced to a mandatory term of eight years in prison.
The appellant now appeals, asserting the following five assignments of error for our review.
 ASSIGNMENT OF ERROR NO. I The trial court erred in admitting Defendant-Appellant's statement obtained by police in violation of his Miranda and Vienna Convention rights.
 In his first assignment of error, Mendoza argues that the trial court erred in admitting the statement obtained by the police in violation of his Miranda and Vienna Convention rights. Mendoza claims that Spanish is his primary language and that he has difficulty understanding English. He further contends that the police made no attempt to provide him with a Miranda waiver written in Spanish, nor an opportunity to consult with his Mexican Consulate.
Mendoza was interrogated by the Marion Police Department following his arrest on July 19, 2000. The interview was conducted in English. At the beginning of the interview, Mendoza was advised in English of his Miranda rights both orally and in writing. He verbally indicated that he understood his rights and signed a waiver. Mendoza filed a motion to suppress the statements claiming that he did not fully understand the Miranda warnings and that he was not advised of certain rights under the Vienna Convention. The trial court issued a three-page decision holding that Mendoza understood the Miranda warnings and that based upon the totality of the circumstances he knowingly and intelligently waived his right to counsel and right against self-incrimination.
Review of a motion to suppress ruling involves a mixed question of law and fact.[1] In a motion to suppress, the trial court assumes the role of the trier of fact, and, as such, is in the best position to resolve questions of fact and to evaluate witness credibility.[2]
Accordingly, in our review, we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence.[3] Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard.[4] That is, the application of the law to the trial court's findings of fact is subject to a de novo standard of review.[5]
"It is well established that a defendant who is subjected to custodial interrogation must be advised of his or her Miranda rights before statements obtained during the interrogation will be admissible."[6]
However, those rights may be waived. An express written or oral waiver of the right to remain silent or right to counsel can evidence strong proof that the waiver is valid.[7] In some cases, waiver can be inferred from the words and actions of the person interrogated.[8] The question at hand is whether Mendoza, whose primary language is Spanish, knowingly and intelligently waived his Miranda rights. "The determination whether statements obtained during custodial interrogation are admissible against the accused is to be made upon an inquiry into the totality of the circumstances surrounding the interrogation, to ascertain whether the accused in fact knowingly and voluntarily decided to forgo his rights to remain silent and to have the assistance of counsel."[9]
With these principles in mind, we turn to the question of whether Mendoza was properly given notice of his Miranda rights. In the instant case, the interviewing officer advised Mendoza, in English, of his right to remain silent and right to counsel. Mendoza verbally signaled that he understood and then signed a written waiver of his rights. The facts before the trial court indicated that the interviewing officer and Mendoza were able to understand each other. Mendoza responded to the interrogating officer's questions and advised him of the following information: his date of birth; that he was in this country illegally; that he had read a newspaper to find the apartment involved in the case; that he had spent two to three weeks in Marion and had never been there before; that he found the key to the apartment in the mailbox; and, that his and the co-defendant's belongings were in the duffel bag found in the apartment. Mendoza's answers were appropriate to the questions asked, and responsive. He indicated that he understood English, and the interrogating officer claimed that if he encountered difficulty communicating with Mendoza he would have terminated the interview and arranged for an interpreter. At one point, Mendoza became confused over the meaning of the term "attorney." However, when the word "lawyer" was substituted, Mendoza indicated that he understood. This signifies that if Mendoza did not understand, he would ask for a clarification. Considering the totality of the circumstances surrounding the interview, we find that Mendoza knowingly and intelligently waived his right to counsel and his right against self-incrimination.
Mendoza also cited the case of State v. Ramirez[10] to support his motion to suppress. Ramirez is the sole Ohio case which discusses Article 36 of the Vienna Convention on Consular Relations. AlthoughRamirez discussed the rights provided to individuals under the Vienna Convention, it did not hold that the State was required to advise the defendant that he had a right to consult with his country's consulate. Evidence is only suppressed where a Constitutional right is violated[11]
and rights arising from the Vienna Convention do not rise to the level of Constitutional rights. Therefore, Mendoza's first assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. II Defendant-Appellant was denied his Sixth Amendment right to the effective assistance of counsel by defense counsel's failure to request a severance of Defendant's trial.
 For his second assignment of error, Mendoza claims he was denied his Sixth Amendment right to the effective assistance of counsel by defense counsel's failure to request a severance of defendant's trial. In support of his argument, Mendoza cites State v. Bradley[12]
which provides that "to show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." Aside from claiming that the result would have been different, Mendoza offers no facts from the present case to fortify this bare assertion.
The standard of review for a claim of ineffective assistance of counsel is well-settled. To successfully present a claim, a party must meet the two-prong test set forth by the United States Supreme Court in Stricklandv. Washington.[13] "Reversal of a conviction for ineffective assistance requires that the defendant show, first, that counsel's performance was deficient and, second, that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial."[14] A claim may be dismissed for appellant's failure to satisfy either prong.[15] The Supreme Court of Ohio has held that counsel's performance is deficient if it falls below the objective standard of reasonable representation.[16]
The law favors the joinder of defendants and the avoidance of multiple trials because joinder "conserves judicial and prosecutorial time, lessens the not inconsiderable expense of multiple trials, diminishes inconvenience to witnesses, and minimizes the possibility of incongruous results in successive trials before different juries."[17]
Additionally, R.C. 2945.13 provides that two or more persons who are jointly indicted for a felony shall be tried jointly unless the court, for good cause, orders one or more of the defendants to be tried separately.[18]
The appellant carries the burden to prove that his case was prejudiced by trial counsel's failure to request a severance.[19] In the present case, Mendoza has failed to offer any evidence to support the argument that his trial counsel's performance was objectively unreasonable, and offered no facts to prove that his defense was antagonistic with his co-defendant's. We note that a reviewing court need not analyze defense counsel's strategical and tactical decisions that rest well within the range of professionally reasonable judgment.[20] Nevertheless, we recognize that Mendoza's trial counsel may have wisely determined that his chance of successfully requesting a severance from the co-defendant's trial was slim.
Because Mendoza has not shown that trial counsel's performance was deficient, we need not ask whether the alleged deficient performance deprived him of a fair trial. Accordingly, Appellant's second assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. III The trial court erred in sentencing Defendant-Appellant for a felony of the second degree where the evidence did not clearly prove the amount of the drug involved.
 In his third assignment of error, Mendoza contends that the prosecution never established the weight, in grams, of the marijuana beyond a reasonable doubt. R.C. 2925.03(C)(3)(f) provides that if the amount of the drug involved exceeds 20,000 grams, trafficking in marijuana is a felony of the second degree and an eight year mandatory prison term is imposed. In the case at bar, the jury was instructed to determine the amount of marijuana involved. The jury checked the box on the verdict form to indicate that the amount of marijuana exceeded 20,000 grams.
Our standard of review "is whether, after reviewing the evidence in a light most favorable to the prosecution, a reasonable jury could have found the essential elements of the crime beyond a reasonable doubt."[21]
We must remember that the weight afforded the evidence and the credibility of witnesses rests within the province of the jury.[22]
Where the record reveals that a conviction was based upon sufficient evidence, an appellate court may not reverse a jury verdict.[23]
The marijuana was wrapped in eight different compressed blocks and shipped in two boxes. Appellant points out that only one block of marijuana was cut in half in order to be weighed. The largest block was sawed in half because it was too heavy for the scales. The other blocks were never cut in half or otherwise dissected to determine whether they contained solely vegetable material, or whether they were contaminated with other vegetable materials or objects.
The jury based its decision, in part, upon the testimony of the State's expert, the Director of the Mansfield Police Department Crime Laboratory, who has examined marijuana and other controlled substances for eighteen years. Throughout his career as a forensic scientist, he has chemically analyzed controlled substances on a daily basis and has testified as an expert witness over 175 times. Based upon his analysis of the marijuana, he concluded that there was approximately 24,626 grams of marijuana in both packages, though he acknowledged that it was possible that a metal object could have been placed within the blocks. Mendoza offered no expert testimony to contradict the state's expert. Nor did Mendoza conduct his own tests to determine the weight of the marijuana.
In light of the evidence and testimony within the record, we find that the jury had before it sufficient evidence upon which to base its verdict. Accordingly, Appellant's third assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. IV The trial court erred in convicting Defendant-Appellant when proof was allowed through the non-verbatim translations of an interpreter.
 In his fourth assignment of error, Mendoza maintains that the trial court erred by allowing the jury to consider the testimony of a Spanish-speaking witness as translated through an interpreter.[24] The interpreter, who has translated for approximately twenty years, took an oath to correctly and accurately translate the witness' testimony. Mendoza argues that the translations were frequently non-verbatim, and were elicited following lengthy conversations between the interpreter and the witness. Mendoza claims that the record speaks for itself on how the jury must have been bewildered by the testimony.
Our review of the record reveals that no objections were made to the interpreter's translation of the witness' testimony. Unless the error is plain error, it is waived unless objected to.[25] With regard to the plain error doctrine, this Court has followed State v. Long[26] which "stated that the plain error doctrine will only be invoked under exceptional circumstances and only to prevent a manifest miscarriage of justice."[27] This same principle has been applied by our sister courts when allegations were raised as to an interpreter's qualifications or adequacy and where no objections were raised to bring such issues to the trial court's attention.[28]
In the present case, Mendoza offered no objections concerning the interpreter's translation of the witness' testimony. The trial transcript fails to indicate that the interpreter's translations were inadequate or confusing in such a manner as to prejudice the outcome of the case. We cannot find that the interpreter's translations created confusion which amounted to plain error; therefore, Mendoza's failure to object to the translated testimony waives the error. Accordingly, Mendoza's fourth assignment of error is not well-taken and is overruled.
 ASSIGNMENT OF ERROR NO. V The prosecutor deprived defendant of a fair trial by making prejudicial comments in closing argument.
In his fifth and final assignment of error, appellant alleges that the prosecution improperly commented on appellant's defense during the rebuttal closing argument. Specifically, Mendoza objected to the following remarks by the prosecution which pertained to the presentation of evidence and witnesses:
 "Defense counsel will stand up and say, `There's not enough evidence,' because that's what they're paid to do."
 "We allow both sides to present whatever evidence is relevant in this case. We have the burden of proving the Defendants guilty beyond a reasonable doubt, make no mistake about that. Both sides have the opportunity to subpoena witnesses."
 "Both sides have the opportunity to have testing done if that's necessary."
 Mendoza contends that the remarks were inappropriate, that they were intentionally made to improperly influence the jury, and that they improperly suggest that he should have taken the stand to testify. We disagree.
The test concerning prosecutorial misconduct is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant.[29] An appellate court should consider several factors in making this determination: "(1) the nature of the remarks, (2) whether an objection was made by counsel, (3) whether corrective instructions were given by the court, and (4) the strength of the evidence against the defendant."[30] The reviewing court should also ask whether the misconduct was an isolated incident in an otherwise properly tried case.[31] A prosecutor's misconduct will not be considered grounds for reversal unless the misconduct has deprived the defendant of a fair trial.[32]
In the case at bar, the prosecutor's remarks were made in the rebuttal portion of his final argument. Defense counsel objected to each of the above quoted portions of the prosecutor's rebuttal. Following an objection to the prosecutor's "that's what they're paid to do" remark, the court advised the prosecutor to keep his personal opinion comments to a minimum and to move on. The court overruled the defense counsel's objections to the other comments and was within its bounds to afford the prosecutor wide latitude. Over the course of the trial, the prosecution built a strong case against the defendant which Mendoza did not counter with his own witnesses or evidence. In total, the alleged misconduct was an isolated incident in an otherwise properly tried case, and we cannot conclude that such minor misconduct deprived the defendant of a fair trial. Therefore, Mendoza's fifth assignment of error is overruled.
 _______________ HADLEY, J.
WALTERS, P.J., and BRYANT, J., concur.
[1] State v. Norman (1999), 136 Ohio App.3d 46, 51.
[2] Id.
[3] Id.
[4] Id.
[5] Id.
[6] State v. Treesh (2001), 90 Ohio St.3d 460, 470.
[7] North Carolina v. Butler (1979), 441 U.S. 369, 373.
[8] Id.
[9] Fare v. Michael C. (1979), 442 U.S. 724-725, citing Mirandav. Arizona (1966), 384 U.S. 436, 475-477.
[10] State v. Ramirez (1999), 135 Ohio App.3d 89.
[11] Hilliard v. Elfrink (1996), 770 Ohio St.3d 155, 158.
[12] State v. Bradley (1989), 42 Ohio St.3d 136, paragraph three of the syllabus.
[13] Strickland v. Washington (1984), 466 U.S. 668. See, also,Bradley, 42 Ohio St.3d 136.
[14] Ohio v. Jones (2000), 90 Ohio St.3d 403, 407, citing Strickland,466 U.S. 668. Accord Bradley, 42 Ohio St.3d 136.
[15] Strickland, 466 U.S. 668.
[16] Bradley, 42 Ohio St.3d 136.
[17] State v. Thomas (1980), 61 Ohio St.2d 223, 225; State v. Bordeau(April 7, 1988), Franklin App. No. 87AP-688, unreported; State v.Daniels (1993), 92 Ohio App.3d 473.
[18] See, also, Crim.R. 13.
[19] State v. Torres (1975), 51 Ohio App.2d 132.
[20] State v. Robinson (1996), 108 Ohio App.3d 428; State v. Walker(1993), 90 Ohio App.3d 352; Strickland, 466 U.S. 668.
[21] State v. Martin (1986), 21 Ohio St.3d 91, 94, citing Jackson v.Virginia (1979), 443 U.S. 307.
[22] Id.
[23] State v. DeHass (1967), 10 Ohio St.2d 230.
[24] Ohio law provides for the use of interpreters. See R.C. 2311.14; Evid.R. 604.
[25] Crim.R. 52(B).
[26] State v. Long (1988), 53 Ohio St.2d 91.
[27] State v. Carpenter (March 22, 1996), Union App. No. 14-95-28,unreported.
[28] State v. Rivera (1994), 99 Ohio App.3d 325; State v. Rosa
(1988), 47 Ohio App.3d 172.
[29] State v. Lott (1990), 51 Ohio St.3d 160.
[30] State v. Braxton (1995), 102 Ohio App.3d 28, 41.
[31] Id.
[32] Id.